STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GARDEN STATE RACING ASSOCIATION, DEFENDANT-APPELLANT.

Argued May 21, 1947—Decided September 12, 1947.

For the plaintiff-respondent, *Walter D. Van Riper,* Attorney-General.

For the defendant-appellant, *Samuel P. Orlando* (*Thomas J. Brogan,* of counsel).

The opinion of the court was delivered by

FREUND, J. The State of New Jersey recovered a judgment against the Garden State Racing Association for the sum of $557,600.20, being the amount of "breaks" due to the state from the operation of appellant's race track at Camden pursuant to the formula set forth in chapter 169 of the laws of 1946, *R. S.* 5:5–64. The constitutionality of this statute is the sole issue involved, the facts having been stipulated by the respective parties.

The New Jersey Racing Commission created pursuant to *R. S.* 5:5–22, *et seq.*, was authorized to license the operation of running horse race meetings on not more than four tracks, at which the pari-mutuel system of wagering on the results of such races was to be conducted. It has granted only three such permits; to appellant, Garden State Racing Association, on November 6th, 1941; to Atlantic City Racing Association and to Monmouth Park Jockey Club on January 30th, 1946. The permits issued are annual permits renewable in accordance with the provisions of the statute.

Under the pari-mutuel system of wagering, the amount due the holders of the winning tickets is computed to the nearest five cents on the dollar wagered. These odd cents are called the "breaks" defined by statute, *R. S.* 5:5–64 "as the odd cents over any multiple of five cents, calculated on the basis of one dollar otherwise payable to a patron." The present controversy concerns these "breaks." It is apparent that this method of computation and payment is for the convenience of the permit holder in the operation of the pari-mutuel system of wagering. 38 *C. J. S.* 47, § 1; *Wise* v. *Delaware Steeplechase and Race Association (Del.),* 18 *Atl. Rep. (2d)* 419; *affirmed,* 27 *Id.* 357.

Prior to 1946, section 44 of chapter 17 of the laws of 1940 controlled the disposition of the "breaks." Under this statute, the permit holder was permitted to retain the "breaks." From July, 1942, when the appellant commenced operation of its track, until the end of the 1945 racing season, the "breaks" or "odd cents" realized from the wagering at appellant's track, which it was permitted to retain and appropriate to itself under the then existing legislation, aggregated

$1,650,000. On April 25th, 1946, the legislature amended section 44, *supra,* by enacting chapter 169 of the laws of 1946, *R. S.* 5:5–64, which provides that the permit holder shall pay to the state a share of said "breaks" in accordance with the schedule therein set forth. This share due to the state from the appellant for the year 1946 under *R. S.* 5:5–64 amounts to $557,600.20, the amount of the judgment from which this appeal was taken.

The appellant argues that the statute is unconstitutional, being in violation of the equal protection clause of the Fourteenth Amendment of the Federal Constitution, and of article 4, section 7, paragraphs 4 and 11 of the New Jersey Constitution. The basis of the attack is that the legislature has made a classification that is arbitrary, capricious and has no substantial relation to the object of the legislation, in that it has divided race track permit holders into two classes; (1) those operating for more than two years, and (2) those operating for less than two years. The former are required to pay to the state their prescribed share of the "breaks," while the state foregoes its share in the "breaks" with the latter during the first two years of their operation, unless the daily average contributions exceed the sum specified in the statute. The appellant is the only permit holder which comes within the first classification, having operated its race track for more than two years, *i. e.,* since July, 1942. The only other two permit holders in the state are in the second classification, as they did not receive their licenses until January 30th, 1946. It is reasonable to assume that the legislature intended that new race track operators be permitted for the first two years of their operation to derive the same privilege or advantage with respect to said "breaks" which the appellant had enjoyed for a period of four years, *i. e.,* from 1942 to 1945, inclusive.

The business of horse racing and pari-mutuel wagering is so definitely affected with a *quasi*-public interest that legislative supervision, control and regulation is without question required. There was a time when betting on horse racing was prohibited by constitutional amendment, article 4, section 7, paragraph 2 of the Constitution of New Jersey, as

amended September 27th, 1897, but pari-mutuel betting is now permitted at legalized race tracks by virtue of a recent constitutional amendment, adopted at an election held on June 20th, 1939. The public seems to have increased its interest in racing, particularly when indulged in with betting. It is a fair inference that the legislative purposes were; first, to promote and regulate racing under the control and supervision of the state; second, to provide a means of recreation; and third, to share in the revenue as a means of supporting the state government. We are not disposed to accept appellant's argument that the sole purpose of the statute is to raise revenue. We believe it to be one of the objects but, manifestly, it is not the sole object.

The "breaks" do not belong to the race track permit holder, except through the authority of the state. The permit holder has no vested property right in the "breaks" and it has only such right or interest therein as the state chooses by legislation to grant. Indeed, appellant concedes the right and power of the state to take any part or all of these "breaks." The appellant contends, however, that when the state, through the legislature, declared that it would not share with permit holders in the "breaks" for the first two years of operation, it denied to appellant the equal protection of the laws because the appellant is the only permit holder which has operated a track for more than two years and is thus excluded from the exemption. The grant of an exemption rests upon the theory that such exemption will benefit the public, and not upon any theory that it will impose a burden upon the appellant. If there is any inequality, it is favorable to the appellant and of this it has no legal right to complain.

We are guided by the principle that a statute must be obeyed unless it is in conflict with some command of the constitution, either federal or state. We do not assume to pass judgment upon the wisdom of the legislature; our duty is to ascertain if it has kept within its power. "It is a familiar rule of the construction of statutes that the court will not declare void an act of the legislature for unconstitutionality when a construction can be given to it which will not have that effect." *South Amboy* v. *Pennsylvania Railroad,* 77 *N. J. Eq.* 242 (at p. 249).

It has frequently been declared to be within the competence of the legislature to classify objects of legislation for the purpose of taxation or exemption from taxation; to prescribe particular rules for the several occupations; and to establish distinctions in the rights, obligations, duties and capacities of citizens. The business of operating race tracks or of dealing in intoxicating liquor, for example, requires statutory regulation for the general benefit of the public, when it would be impracticable or impolitic to impose the same upon other businesses. *Wight* v. *New Jersey Racing Commission,* 128 *N. J. L.* 517; *Hudson Bergen, &c.,* v. *Hoboken,* 135 *Id.* 502; *Crowley* v. *Christensen,* 137 *U. S.* 86; 34 *L. Ed.* 620. The classification underlying such legislation must be reasonable. If the law be otherwise unobjectionable, all that can be required is that it be general in its application to the class or locality to which it may apply. It is then public in character and of its propriety and policy the legislature must be the judge. *Van Riper* v. *Parsons,* 40 *N. J. L.* 1; *Id.* 123; *State Board of Assessors* v. *Central Railroad Co.,* 48 *Id.* 146, 271; *Budd* v. *Hancock, Comptroller,* 66 *Id.* 133; *Schwartz* v. *Essex County Board of Taxation,* 129 *Id.* 129; *affirmed,* 130 *Id.* 177; *Magoun* v. *Illinois Trust and Savings Bank,* 170 *U. S.* 283; 42 *L. Ed.* 1037; *Orient Insurance Co.* v. *Daggs,* 172 *U. S.* 557; 43 *L. Ed.* 552; *Louisville and Nashville Railroad Co.* v. *Melton,* 218 *U. S.* 36; 54 *L. Ed.* 921; *International Harvester Co.* v. *Missouri,* 234 *U. S.* 199; 58 *L. Ed.* 1276; *State Board* v. *Jackson,* 283 *U. S.* 527; 75 *L. Ed.* 1248; *Williams* v. *Mayor,* 289 *U. S.* 36; 77 *L. Ed.* 1015; *Carmichael* v. *Southern Coal and Coke Co.,* 301 *U. S.* 494; 81 *L. Ed.* 1245; *Caskey Baking Co.* v. *Virginia,* 313 *U. S.* 117; 85 *L. Ed.* 1223; 2 *Cooley, Constitutional Limitations* (*8th ed.*) 803.

The legislature has necessarily a wide range of discretion in distinguishing, selecting and classifying, and the appellant admits that "undoubtedly the legislature has a broad power to classify." The appellant further concedes that the statute under attack "enacts two different formulas, one for each of these classes, to determine what part of the total breaks each of these classes shall pay to the state." There is no express

prohibition against the power of the legislature to subclassify, nor has appellant pointed out such prohibition. *Boorum* v. *Connelly,* 66 *N. J. L.* 197; *Lewis* v. *Jersey City,* 66 *Id.* 582. It is unnecessary for the legislature to state the reasoning upon which the classification is based or justified; it is sufficient to satisfy the demand of the constitution if the classification is practical; and it is not reviewable unless palpably arbitrary. *Orient Insurance Co.* v. *Daggs, supra.*

The legislature is not to be bound by any rule of absolute equality. Classification may produce discrimination but, if not arbitrary, it is not unconstitutional. The classification prescribed in the statute under consideration which gives the state a share in the "breaks" of the "two year old" tracks and waives it for those "under two" is not so arbitrary or discriminating as to be unconstitutional. So long as the benefits derived or the burdens imposed bear alike upon everyone within the class and the classification can be justified upon any reasonable theory, it cannot be declared violative of any constitutional provisions.

Mr. Justice McKenna, in *International Harvester Co.* v. *Missouri, supra,* in replying to similar arguments as raised here, said (at *p.* 210):

"Both [contentions], therefore, invoke a consideration of the power of classification which may be exerted in the legislation of the state. And we shall presently see that power has very broad range. A classification is not invalid because of simple inequality. * * * Classification must be accommodated to the problems of legislation. * * * If this power of classification did not exist, to what straits legislation would be brought. * * * Admit exceptions, and you admit the power of the legislature to select them. * * * The foundation of our decision is, of course, the power of classification which a legislature may exercise, and the cases we have cited, as well as others which may be cited, demonstrate that some latitude must be allowed to the legislative judgment in selecting the 'basis of community.' We have said that it must be palpably arbitrary to authorize a judicial review of it, and that it cannot be disturbed by the courts 'unless they can see clearly that there is no fair reason for

the law that would not require with equal force its extension to others whom it leaves untouched.' *Mo., Kan. & Tx. Ry. Co.* v. *May,* 194 *U. S.* 267, 269; *Williams* v. *Arkansas,* 217 *U. S.* 79, 90; *Watson* v. *Maryland,* 218 *U. S.* 173, 179."

In *Magoun* v. *Illinois Trust, &c., Bank, supra* (at *p.* 292), the United States Supreme Court declared:

"'This brings us to the law in controversy. The appellant attacks both its principles and its provisions—its principles as necessarily arbitrary and its provisions as causing discriminations and creating inequality in the burdens of taxation.

"'Is the act open to this criticism? * * * What satisfies this equality has not been and probably never can be precisely defined. * * * it may be safely said that the rule prescribes no rigid equality and permits to the discretion and wisdom of the state a wide latitude as far as interference by this court is concerned. Nor with the impolicy of the law has it concern. * * * the state may distinguish, select, and classify objects of legislation, and necessarily this power must have a wide range of discretion. * * * There is therefore no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things. * * * But the appellant asserts discrimination, and claims that the exemptions produce the greatest inequality. * * * The exemptions do not render its operation unequal within the meaning of the Fourteenth Amendment. 'The right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power wherever it has not in terms been taken away. To some extent it must exist always, for the selection of subjects of taxation is of itself an exemption of what is not selected.' *Cooley on Taxation,* 200. See, also, the remarks of Mr. Justice Bradley in *Bell's Gap Railroad* v. *Pennsylvania,* 134 *U. S.* 232."

See, also, *Carmichael* v. *Southern Coal and Coke Co., supra.*

The appellant argues that the act is invalid because it is the only permit holder which has operated a race track for more than two years and, therefore, within the classification required to share the "breaks" with the state, and that the classification bears no relation to the object of the legislation. We have already indicated that the appellant has no rights in the "breaks" except as the state may grant. Whatever is a privilege within the power of the state to grant, rather than a right, may within reasonable limitations be enjoyed by some and withheld from others. The legislature has the power and authority to prescribe the conditions under which the privilege may be obtained and the granting of a grace period of two years to new permit holders is within the specific province of the legislature. Since the "breaks" are not the property of the permit holders and the state is at liberty to increase its share in the breakage or to take all of the "breaks," the fact that the state for a limited period of time waives its right to participate in the "breaks" with new race tracks does not condemn the statute as invalid. Taking into consideration the fact that for four years prior to the enactment of the statute, the appellant was permitted by the state's grace to retain and appropriate all of the "breaks," we conclude that it was the obvious intention of the legislature to aid in the financial establishment of the new tracks as well by relinquishing the state's share in the "breaks" for the first two years of operation. *State Board* v. *Central Railroad, supra* (at *p.* 305); *Burlington Distilling Co.* v. *State Board of Assessors,* 86 *N. J. L.* 92; *Schwartz* v. *Essex County Board, supra.*

The statute under consideration affects all horse race track permit holders within the state. While the maximum number of permits which the Racing Commission is authorized to issue is four, only three have been issued. The group or class affected by the legislation is small and limited, but percentagewise the division of the classification is one-third and two-thirds. The statute, nevertheless, is a general and not a special law. If the basis of classification is valid, it is wholly immaterial how many or how few there are in the class. The fact that "there happens to be but one individual

of the class, or one place where it produces effect" does not convert an otherwise general law into a special one. *Van Riper* v. *Parsons, supra; Boorum* v. *Connelly, supra; Budd* v. *Hancock, Comptroller, supra; Van Cleve* v. *Passaic Valley Sewerage Commissioners,* 71 *N. J. L.* 183 (at *p.* 200); *Burlington* v. *Pennsylvania Railroad Co.,* 104 *Id.* 649 (at *p.* 654); *Raymond* v. *Teaneck,* 118 *Id.* 109; *State* v. *Guida,* 119 *Id.* 464; *Provident Savings Institution* v. *Malone,* 221 *U. S.* 660; 55 *L. Ed.* 899; *Williams* v. *Mayor, supra.* The statute considered in *Van Riper* v. *Parsons, supra,* affected only one community, Jersey City. In *Williams* v. *Mayor, supra,* the legislation enacted by the General Assembly of Maryland was for the relief of one insolvent railroad. In *Provident Savings Institution* v. *Malone, supra,* the United States Supreme Court had under consideration a statute of Massachusetts which provided for the payment of unclaimed deposits by savings banks to the state. The bank contended it was denied the equal protection of the law because the act applied only to savings banks. Mr. Justice Lamar said (at *p.* 661):

"There is nothing unequal or discriminatory in making the act applicable only to abandoned deposits in a savings bank. The classification is reasonable. * * * The statute does not violate the Constitution of the United States." *Security Savings Bank* v. *California,* 263 *U. S.* 282; 68 *L. Ed.* 301.

So, in this case, the legislature may require permit holders which have been in operation for more than two years to share the "breaks" with the state and may waive its right to share with permit holders for the first two years of operation.

Indeed, the payment to the state of a share of the "breaks" is in the nature of a license fee for permission to engage in the business of horse racing and pari-mutuel wagering and it is within the discretion of the legislature to impose graduating license fees dependent upon the length of time one has engaged in business. *Kane* v. *State,* 81 *N. J. L.* 594; *affirmed,* 242 *U. S.* 160; 61 *L. Ed.* 222; *North Jersey Street Railway* v. *Jersey City,* 73 *N. J. L.* 481; *affirmed,* 74 *Id.* 761; 2 *Cooley, Const. Limit.* (*8th ed.*) 1044.

We are satisfied that the classification in the instant matter is reasonable and bears a substantial relation to the object of the legislation. It is not arbitrary, nor does it violate the federal or state constitutions. We conclude that the statute is constitutional.

The judgment below will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McGEEHAN, McLEAN, JJ. 14.

*For reversal*—None.