279 CLUB, INC., A NEW JERSEY CORPORATION, APPELLANT, v. MUNICIPAL BOARD OF ALCOHOLIC BEVERAGE CONTROL OF THE CITY OF NEWARK, STATE OF NEW JERSEY AND WILLIAM HOWE DAVIS, DIRECTOR, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF ALCOHOLIC BEVERAGE CONTROL, STATE OF NEW JERSEY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 15, 1962—Decided February 8, 1962.

Before Judges Price, Sullivan and Lewis.

*Mr. David M. Beckerman* argued the cause for appellant (*Messrs. Waldor & Beckerman,* attorneys; *Mr. Beckerman,* of counsel and on the brief).

*Mr. Samuel B. Helfand,* Deputy Attorney General, argued the cause for respondent Division of Alcoholic Beverage Control (*Mr. David D. Furman,* Attorney General, attorney; *Mr. Helfand,* of counsel).

The opinion of the court was delivered by

Lewis, J. A. D.  This is an appeal from (1) the conclusions and orders of the Department of Law and Public Safety (Division of Alcoholic Beverage Control) affirming the unanimous action of the Municipal Board of Alcoholic Beverage Control of the City of Newark in denying the application of appellant for renewal of its 1960–61 plenary retail consumption license, and (2) the Director's interlocutory order of June 29, 1961 refusing to extend appellant's temporary license pending the outcome of appellant's appeal to the Division of Alcoholic Beverage Control from the action of the Municipal Board of Alcoholic Beverage Control of the City of Newark denying appellant's applica-

tion for a renewal of its license for the year 1961–62. Leave to appeal from such interlocutory order was granted by this court on July 18, 1961. An interim extension of appellant's license was also ordered by this court pending the determination of this appeal. The passage of time renders moot the original issue involving the renewal of appellant's license for the year 1960–61 except that appellant's right to a renewal of its license for the year 1961–62 depends on the outcome of the 1960–61 appeal proceedings.

The 279 Club, Inc., appellant (also herein club or licensee), maintains that the refusal to renew its license was an arbitrary, discriminatory and capricious abuse of discretion, and that (1) appellant should not be charged with the alleged offense, (2) the proofs relate only to a single violation and (3) *scienter* on the part of the licensee was not established. Appellant was ultimately accorded a full and fair hearing by the municipal board and by the Division of Alcoholic Beverage Control on review *de novo*. It is unnecessary to recount the administrative procedural details. The essential facts are these:

Licensee is a New Jersey corporation, the stock of which is wholly owned by its president, one Saul Weisman, and by members of his immediate family. His son, Bernard Weisman, was a stockholder of the corporate licensee, but sometime in 1959 he relinquished his stock interest to his mother, Reba Weisman. Bernard described his activities in the business as "Looking out for my father's interest." The club was opened in the mornings by Saul and at night, "seven nights a week," Bernard was present and assumed the responsibility of checking the cash register and locking up. Appellant had prior encounters with the law—a curfew violation in 1959 (10-day license suspension) and a "refilling liquor bottles" violation in April 1961 (25-day license suspension).

At 7:10 P. M. on May 10, 1960 Bernard was apprehended on charges of unlawful possession and dispensing of marijuana on the licensed premises. The arrest was made by

Detective Hugh McNulty of the narcotic squad of the Newark Police Department. He was accompanied by Detectives Suckey and Kohlman. It was stipulated that the testimony of Kohlman would be, in substance, the same as that given by Detective McNulty. McNulty testified that he followed Bernard into the tavern, and that the arrest was there made after Bernard had taken off his coat and "was in his shirt sleeves and he was behind the bar." Saul Weisman was on the way out of the club as his son entered, and no one else was in the place at that time except a bartender. Before leaving for police headquarters (approximately 15 or 20 minutes following the arrest), Bernard requested the opportunity to telephone his father to return and "take care of the tavern."

The evidence further reveals that on the same day one Dolores Green was likewise apprehended by said detectives for the illicit purchase of marijuana from Bernard Weisman. She testified that Bernard was a bartender at the club, waited on patrons, and on occasions served drinks to her. She further stated that about a week before May 10, 1960 she purchased marijuana at the club from Bernard Weisman, who was tending bar. The record indicates that similar purchases of marijuana were made by her in "Bernard's car." The criminal proceedings against Bernard Weisman resulted in his conviction and a sentence of five to ten years in State Prison. An appeal therefrom is now pending before this court.

In reviewing the renewal determination of a licensing authority, we should note *in limine* certain firmly fixed and cardinal principles of law, enunciated in our judicial decisions, which must be focused upon the facts as disclosed by the record. The sale of intoxicating liquor is a business attended with danger to the community. *Crowley v. Christensen*, 137 *U. S.* 86, 91, 11 *S. Ct.* 13, 15, 34 *L. Ed.* 620, 624 (1890), cited in *Mazza v. Cavicchia*, 15 *N. J.* 498, 505 (1954), wherein it was emphasized that the power of government to regulate activities upon a franchised premises has

uniformly been accorded liberal support by the judiciary, and that it was clearly within the power of the Legislature to provide that a licensee should be liable for such activities "even in the absence of knowledge thereof by the licensee." The character of the liquor trade is *sui generis,* requiring exceptional treatment by the Legislature. *Id.,* at *p.* 506. See also the opinion of Judge (now Justice) Francis, and the authorities he assembled in *Mazza v. Cavicchia,* 28 *N. J. Super.* 280, 284 (*App. Div.* 1953), reversed on other grounds *Mazza, supra,* holding that the responsibility of the licensee does not depend upon the doctrine of *respondeat superior,* nor upon his personal knowledge, intent or participation; he is not relieved even if the violation is contrary to his express instructions. Accord, *F. & A. Distrib. Co. v. Div. of Alcoholic Beverage Control,* 36 *N. J.* 34, 37 (1961).

██ This court has declared "that the commission of an overt act on licensed premises in furtherance or promotion or encouragement of an illicit purpose is in itself an immoral activity comprehended by the scope of the regulatory rule." *In re Schneider,* 12 *N. J. Super.* 449, 457 (*App. Div.* 1951). Whether the activity constituted an indictable common law or statutory crime is not the test. *Ibid. Cf. State v. Baldino,* 11 *N. J. Super.* 158 (*App. Div.* 1951); *State v. Damorjian,* 187 *Wis.* 445, 204 *N. W.* 498 (*Wis. Sup. Ct.* 1925). An acquittal in the criminal proceedings would not negate the findings and conclusion of an administrative agency. *Borough of Park Ridge v. Salimone,* 36 *N. J. Super.* 485, 498 (*App. Div.* 1955), affirmed 21 *N. J.* 28 (1956).

██ The prevailing policy and practice is to "nip reasonably apprehended evils while they are in the bud." *Paddock Bar, Inc. v. Alcoholic Beverage Control Division,* 46 *N. J. Super.* 405, 408 (*App. Div.* 1957); *In re Olympic, Inc.,* 49 *N. J. Super.* 299, 307 (*App. Div.* 1958), certification denied 27 *N. J.* 279 (1958). A liquor license is a privilege; property rights are not involved, and no licensee has a vested right to subsequent terms. *Zicherman v.*

*Driscoll,* 133 *N. J. L.* 586 (*Sup. Ct.* 1946). The renewal of a liquor license rests in the sound discretion of the licensing authority, and unless the evidence clearly indicates an abuse of that discretion a reviewing court should not interfere. *Nordco, Inc. v. State,* 43 *N. J. Super.* 277 (*App. Div.* 1957). Prior infractions of the law may be taken into consideration. *Cf. Butler Oak Tavern v. Division of Alcoholic Beverage Control,* 20 *N. J.* 373, 378 (1956).

The application of the foregoing decisional concepts completely disintegrates the foundation of appellant's arguments on appeal. The only witnesses produced on behalf of appellant were Saul Weisman and his son, Bernard and their testimony in some crucial respects was evasive and contradictory. The narcotic incident was denied by Bernard. He also disavowed any employment connection with the club. Saul testified that neither marijuana nor any other narcotic drug had ever been sold or dispensed on the club premises in his presence or to his knowledge. The testimony of Dolores Green, on the other hand, was unequivocal in her recitation of the fact that she had purchased marijuana from Bernard Weisman on the licensed premises. The evidence is clear that Bernard daily, during his father's absence and incapacity, exercised managerial responsibilities at the club. The issue of the credibility of the witnesses rested with the administrative agency, *Freud v. Davis,* 64 *N. J. Super.* 242, 246-7 (*App. Div.* 1960), and from the proofs adduced at the hearings it could be reasonably concluded that Bernard was engaged in the invidious narcotic traffic and his activities in that illicit business were extended to the licensed premises.

There is a close and definite connection between drug addiction and crime. See the extensive review of "The Narcotic Problem," edited by William L. Prosser, 1 *U. C. L. A. L. Rev.* (June 1954); *Maurer and Vogel, Narcotics and Narcotic Addiction, c.* VIII, *p.* 209 (1954); Finestone, "Narcotics and Criminality," 22 *Law & Contemp.*

*Prob.* 69 (1957). New Jersey adopted the Uniform Narcotic Drug Act in 1933 (*L.* 1933, *c.* 186, *p.* 397). Note, *State v. Reed,* 34 *N. J.* 554 (1961). In this statute, as amended *R. S.* 24:18–1 *et seq.,* marijuana is defined and is included among the prohibited narcotics. The unlawful possession or sale of the drug is made a high misdemeanor with drastic penalties.

Rule 5 of State Regulation No. 20 adopted by the Director of the Division of Alcoholic Beverage Control pursuant to *N. J. S. A.* 33:1–1 *et seq.,* as modified by *N. J. S. A.* 52:17B–1 *et seq.,* reads:

"No licensee shall allow, permit or suffer in or upon the licensed premises any lewdness, *immoral activity*, or foul, filthy or obscene language or conduct, or any brawl, act of violence, disturbance or unnecessary noise; nor shall any licensee allow, permit or suffer the licensed place of business to be conducted in such manner as to become a nuisance." (Emphasis supplied)

The phrase "immoral activity" as used in the rule is not necessarily confined to matters sexual in their nature. It includes acts "which are *contra bonos mores,* inconsistent with rectitude and the standards of conscience and good morals." *In re Schneider, supra,* 12 *N. J. Super.,* at *p.* 458. We hold that the unlawful possession or sale of marijuana on property within the privilege of a liquor license is an immoral activity as contemplated by said rule. It is an enterprise *contra bonos mores.* The actions of the municipal board and the Director were not arbitrary; they were within legal authority premised upon a factual basis.

Affirmed.