279 N.J. Super. 477 (1995)
653 A.2d 582
RONALD C. WENDLING, APPELLANT,
v.
NEW JERSEY RACING COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 1994.
Decided February 14, 1995.
*479 Before Judges BAIME, KESTIN and ARIEL A. RODRIGUEZ.
David A. Gies, attorney for appellant.
Deborah T. Poritz, Attorney General, attorney for respondent (Mary C. Jacobson and Debbie J. Thompson, Deputy Attorneys General, on the brief).
The Opinion of the court was delivered by ARIEL A. RODRIGUEZ, J.A.D.
The issue presented is whether the New Jersey Racing Commission (Commission) has the authority to discipline a licensed trainer who violates N.J.A.C. 13:70-20.9 by hiring a suspended jockey for a job which is exempt from the licensing requirement. We hold that it does and affirm the Commission's final decision fining Ronald C. Wendling $500. We reject Wendling's argument that N.J.A.C. 13:70-20.9 violates the Equal Protection Clauses of the United States and New Jersey Constitutions.
The facts are undisputed. Wendling is licensed by the Commission as a trainer and his farm, Charter Acres, is licensed as a training center for race horses. There, he stables race horses as well as non-racing animals (brood mares, yearlings, weanlings and pleasure horses). Wendling maintains separate balance sheets and ledgers, files separate tax returns and uses separate bank accounts for the racing and non-racing businesses he conducts on the farm.
Wendling employed Felix Quinones as a general farmhand on Charter Acres. Quinones is a former jockey whose license has been suspended indefinitely by the Commission because he took a bribe to fix a race. Under the terms of the suspension, Quinones was denied "the privileges of all grounds under the jurisdiction of *480 the New Jersey Racing Commission." Quinones was hired to perform general farm maintenance, including repairing stalls and fences, cleaning the barn area and doing household and farm chores. Although he worked with yearlings, he did not attend to race horses. Quinones was paid from the non-racing business account. A Commission investigator told Wendling that Quinones was not permitted to be on the farm by virtue of N.J.A.C. 13:70-20.9. Accordingly, Wendling terminated Quinones' employment. However, he later re-hired Quinones reasoning that as long as Quinones did not attend to race horses he could be employed.[1] Afterwards, two Commission investigators visited Charter Acres and found Quinones working there. At that time Wendling's race horses were stabled at Garden State Park. However, Wendling concedes that when race horses were stabled at Charter Acres, Quinones had free access to them.
Wendling was charged with violating N.J.A.C. 13:70-20.9 which reads:
Registering employees
A trainer shall register with the backstretch security every person in his or her employ, and it shall be his or her duty to see to it that his or her employees obtain licenses from the Commission. Trainers employing or harboring unlicensed or disqualified personnel may be subject to disciplinary action.
The Board of Stewards at Garden State Park found Wendling in violation and imposed a $500 fine. Wendling appealed and the matter was transferred to the Office of Administrative Law (OAL) for determination as a contested case. Both parties moved for summary decision. The Administrative Law Judge (ALJ) found that "Wendling employed Quinones solely for services unrelated to matters within the Racing Commission's purview." The ALJ concluded that the Commission "can only regulate matters relating *481 to New Jersey racing.... Simply stated, the Commission has no jurisdiction or authority in any matter unrelated to its regulatory scheme."
In a written decision the Commission rejected the ALJ's legal interpretation. Because the ALJ had rendered a summary decision, the Commission entered a limited remand to enable the ALJ to advise it if its agency review had disposed of all the pending issues. While on limited remand, Wendling filed a second motion for summary decision attacking, for the first time, N.J.A.C. 13:70-20.9 on federal and state constitutional grounds. The ALJ denied this motion, concluding that it raised legal issues that should have been raised in Wendling's original cross-motion.

I
Wendling first contends that he did not violate N.J.A.C. 13:70-20.9 because the Commission lacks jurisdiction over employees on a licensed farm who do not directly attend to race horses. This argument is based on N.J.A.C. 13:70-4.15(d) which reads,
Requirements; farms or licensed tracks
(d) Any [race horse stabled in a licensed farm] must be under the care and custody of a licensed trainer. It shall be the responsibility for [sic] the trainer to insure that only individuals licensed by the Commissioner [sic] are employed in any capacity of caretaker, groom or other attendant with respect to the care, custody and training of such a horse. Nothing in this section shall be deemed to apply to brood mares, foals, weanlings, yearlings, stallions or other horses not in training.

(emphasis added).
Wendling argues that because this regulation allows certain unlicensed employees to work on a licensed farm, the Commission cannot require that Quinones be registered since he did not attend to race horses. We disagree for factual and substantial reasons.
The premise that Quinones did not work with race horses is not supported by the proofs. On one occasion, Quinones helped transport a race horse from Charter Acres to a track in Delaware. Wendling directed him to "go down with the van driver and pay somebody to run and saddle the horse." Quinones then saddled the race horse when the Delaware-licensed attendant he hired *482 became unavailable. This incident alone belies Wendling's assertion that Quinones did not attend to race horses.
Even assuming that Quinones did not attend to race horses, Wendling had a duty to register him, and the Commission had the authority to sanction Wendling for employing him. Participating in the horse racing and attendant gambling industry is a privilege and not a right. See State v. Garden State Racing Assn., 136 N.J.L. 173, 175-76, 54 A.2d 916 (E. & A. 1947). By licensing himself as a trainer and his farm as a farm serving this industry, Wendling subjected himself to the rules and regulations of the Commission, including N.J.A.C. 13:70-20.9. It is settled that the State has a strong interest in seeing to it that persons who may be in a position to interfere with the fair and proper conduct of the racing industry are effectively policed and regulated. State v. Dolce, 165 N.J. Super. 488, 491, 398 A.2d 610 (Law Div. 1979), affd., 178 N.J. Super. 275, 428 A.2d 947 (App.Div. 1981). The Legislature granted the Commission broad powers to regulate and license the employees involved in this industry. See N.J.S.A. 5:5-33; Dare v. State, 159 N.J. Super. 533, 537, 388 A.2d 984 (App.Div. 1978). This is because, as the Commission noted in this matter,
The horse racing industry, because of its association with gambling has had to operate and continues to operate under such public scrutiny. The State recognized the necessity of dealing with problems inherent to this field, as well as maintaining a reputation deserving of public confidence.
It is against this regulatory background that we analyze the effect of the last sentence of N.J.A.C. 13:70-4.15(d) upon the registration requirement and proscription on hiring disqualified personnel mandated by N.J.A.C. 13:70-20.9. We are required to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." State v. Maguire, 84 N.J. 508, 514, 423 A.2d 294 (1980).
We begin this analysis by looking to the words of the regulation to ascertain its plain meaning. Town of Morristown v. Woman's Club, 124 N.J. 605, 610, 592 A.2d 216 (1991). N.J.A.C. 13:70-4.15(d) creates a general licensing requirement. All race horses must be under the care and custody of a licensed trainer. The *483 trainer in turn, must insure that only individuals licensed by the Commission attend to the race horses. The last sentence of the section creates an exemption, "Nothing in this section shall be deemed to apply to [non-racing horses] or other horses not in training." Therefore the exemption permits farm employees who do not attend to race horses to be unlicensed. However, that does not mean that a trainer does not have to register such workers. Nor does it mean that a trainer can employ a disqualified person.
N.J.A.C. 13:70-4.15(d) creates a registration requirement. This requirement insures that the Commission has knowledge of the identity of those who have access to race horses. Race horses may be stabled only on the grounds of a race track, training center, or farm licensed by the Commission. N.J.A.C. 13:70-4.15(a). The proscription against a licensed trainer employing or harboring disqualified personnel is designed to aid the Commission in preserving public confidence in the racing industry by controlling which persons have access to horses.
In summary, we discern the following scheme: All persons attending to race horses must be licensed. Persons working on a licensed farm who do not perform tasks that relate directly to racing, need not be licensed. All employees of a licensed trainer working on a licensed farm, must be registered with the backstretch security whether or not they attend to race horses. Disqualified persons may not be employed by a licensed trainer. Here, it is clear that Wendling has violated the regulatory scheme in two respects: he failed to register Quinones, and he employed a disqualified person.

II
Wendling's second contention is that N.J.A.C. 13:70-20.9 violates the Equal Protection Clauses of the United States and New Jersey Constitutions[2] because, as applied, trainers who run *484 race horses off farms located in New Jersey are treated differently from those who run them off out-of-state farms. Wendling based his argument on N.J.A.C. 13:70-4.15(a) which provides,
Requirements; farms or licensed tracks
(a) No horse may start in any race wherein pari-mutuel wagering is conducted unless stabled on the grounds of a racing association licensed by the Commission or at a farm or training facility licensed by the Commission. Nothing in this rule shall prohibit any horse stabled outside the State of New Jersey from vanning to any racing association to start.

(emphasis added).
Wendling argues that out-of-state licensed trainers do not have to register employees on their farm. We disagree. Nothing contained in the regulation creates a distinction between trainers with farms in New Jersey from those who operate out-of-state. All trainers who wish to race in New Jersey must comply with the same requirements. N.J.A.C. 13:70-1.4.[3]

III
Wendling's third claim is that the $500 fine imposed is excessive where the regulation allegedly violated is not adequately clear. Wendling hired a person whose license had been suspended for fixing a race. In light of the strong state policy of ensuring honesty in the racing industry, the fine, which was not the maximum the Commission could have imposed, was not an abuse of discretion.

IV
Wendling's final contention is that the second motion for summary decision made to the ALJ while the matter was pending *485 on remand was timely and should have been considered. This contention is clearly without merit. R. 2:11-3(e)(1)(E). The Appellate Division, and not the OAL, is the proper forum in which to challenge the facial validity of an administrative regulation specially where the matter, as here, is purely a question of law. R. 2:2-3(a); Christian Bros. Inst. v. No. N.J. Interschol. League, 86 N.J. 409, 416, 432 A.2d 26 (1981). This is the forum for deciding whether an administrative regulation is constitutional. Pascucci v. Vagott, 71 N.J. 40, 47, 362 A.2d 566 (1976).
Affirmed.
NOTES
[1] Before the re-hire, Wendling's wife contacted one of the Commission's attorneys. She asked whether she could hire a person suspended by the Commission to work on the farm as long as such a worker was not employed as an attendant for race horses. The attorney agreed to call back, but never did. Wendling's wife followed up with two more phone calls. She received no response from the attorney.
[2] U.S. Const., Amend. XIV, § 1; N.J. Const. Art. 1, Para. 1.
[3] 13:70-1.4 Owners and trainers
All owners and trainers of horses and their stable employees are subject to the laws of the State of New Jersey and the rules of the Racing Commission immediately upon acceptance and occupancy of stabling accommodations from or approved by an association or upon making entry to run on its track. Said owners, trainers and stable employees shall abide by the laws and rules and accept the decision of the stewards on any and all questions to which their authority extends, subject to their right of appeal to the Racing Commission.