849 A.2d 578

KENNETH KANTER, PLAINTIFF–APPELLANT, v. THE TOWN-SHIP OF ROCKAWAY, LORRAINE BENDEROTH, AND AN-THONY J. MAZZOLA D/B/A MAZZOLA'S GENERAL CON-TRACTING, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 5, 2003—Decided June 8, 2004.

474

Before Judges STERN, A.A. RODRÍGUEZ and KIMMELMAN (retired on recall).

*Kenneth Kanter,* appellant, argued the cause pro se.

*Tiena M. Cofoni* argued the cause for respondents *Township of Rockaway* and *Lorraine Benderoth (Edward J. Buzak,* attorney; *Mr. Buzak and Ms. Cofoni,* on the brief). *Douglas J. Kinz* argued the cause for respondent *Anthony J. Mazzola.*

The opinion of the court is delivered by

RODRÍGUEZ, A.A., J.A.D.

The tax sale law, *N.J.S.A.* 54:5–1 to –137(TSL), governs the creation, enforcement and collection of liens on real property to secure the payment of delinquent municipal taxes and assessments. The Legislature has provided several methods to aid municipalities in liquidating delinquent taxes. *See Dvorkin v. Dover Tp.,* 29 *N.J.* 303, 309–12, 148 *A.*2d 793 (1959); Michael G. Pellegrino and Ralph P. Allocca, *Tax Certificates: A Review of the Tax Sale Law,* 26 *Seton Hall L.Rev.* 1607, 1609–13 (1996). In certain circumstances, a municipality is forced to purchase the tax sale certificate itself. *Pellegrino, supra,* 26 *Seton Hall L.Rev.* at 1611. Section 114.2 of the TSL sets out two methods for the assignment of tax sale certificates by a municipality. The first method is assignment to the highest bidder at a public sale. *N.J.S.A.* 54:5–114.2(a). The second method is an assignment for an amount lower than the balance due on the tax sale certificate. *N.J.S.A.* 54:5–114.2(b). In order to effectuate a subsection b sale, the governing body of the municipality must give public notice that it will receive bids on the tax sale certificate for amounts lower than the balance due. If the governing body receives a bid that it is inclined to accept, it must then give public notice of the amount of the bid and its intention to accept or reject the bid at its next regular meeting. At the meeting, the governing body may receive higher bids from any person. The governing body may accept or reject any of the bids.

The issue presented in this appeal is whether, at a subsection b sale, the governing body must accept the highest bid. We hold that the TSL vests upon the governing body the discretion to

reject a higher bid and accept a lower one if such acceptance will result in a prompt return of the property to the tax rolls or benefit the public in some other way.

## I

The operative facts here are as follows. In 1990, the Township of Rockaway (Rockaway) purchased for $4,856.36 its own Tax Sale Certificate (# 23–90) for unpaid municipal liens on real property located on Pawnee Avenue. As far back as 1969, the property had been used as a gasoline service station and automobile repair shop. As a result, it contained underground storage tanks. Rockaway hired The Whitman Companies (Whitman), an environmental consulting firm, to do a study of the property. Whitman determined that there was soil contamination, which would cost almost $130,000 to remediate. By June 2002, the redemption amount on the tax sale certificate totaled $173,585.73. Thus, the estimated costs of the environmental clean up and taxes owed exceeded the assessed value of the property, $267,900. The Rockaway Township Council passed a resolution authorizing the assignment of the tax sale certificate for an amount less than the outstanding taxes pursuant to *N.J.S.A.* 54:5–114.2(b). Notices to bid were published and posted at the Municipal Building, the Public Library and three other locations in the municipality as required by the TSL.

Anthony J. Mazzola submitted a written bid for $2,500. The written bid contained the following representation by Mazzola:

I have been a resident of Rockaway since 1988. I own and run Mazzola's General Contracting since 1992 with the majority of my clientele in and around White Meadow Lake and Rockaway Township. I consider myself an active member of the community and township and have been involved with help and support for the clean up of the above mentioned property, including the introduction between the Whiteman Company and Rockaway Township; a meeting that made the township aware of grant money for the purpose of the preliminary assessment, site investigation and remedial investigation, at no cost to the town. I have actively participated with the Township of Rockaway and the [Whitman] Environmental Company to complete the preliminary assessments and environmental studies to date.

*My efforts are based on the intent of taking ownership of the said property for my own business, which will be the primary residence of Mazzola's General Contract-*

ing, a small office and show room where my clients will have the opportunity first hand to see the quality and operation of my business.

As a resident of White Meadow Lake I am more than aware of the eye sore and burden this piece of property has become. It is my intent if I am awarded this tax certificate to clean up, paint and protect the building [from] further vandalism in the shortest amount of time possible while ownership and foreclosure legalities are in progress.

Rockaway published the $2,500 bid in the Daily Record and announced its intention to accept additional higher bids at the next Township Council meeting.

At that meeting, appellant Kenneth Kanter submitted a written bid for $3,550 and explained that he wanted to build a medical or dental office on the property. Then, Mazzola and Kanter made additional bids. A final bid of $17,510 was submitted by Kanter. Due to the unexpected interest on the property, Rockaway's Township Council decided to reject all bids in order to evaluate its options.

Subsequently, the Township Council authorized another private sale, pursuant to *N.J.S.A* 54:5–114.2(b), setting a $20,000 minimum bid. Mazzola submitted a written bid of $20,000 and again included a personal statement indicating his plans for the property.[1] Rockaway published a notice that it would accept additional bids in $2,500 increments.

At the next Township Council meeting, Kanter bid $22,500 verbally. Rockaway rejected Kanter's bid and accepted Mazzola's. The resolution memorializing the assignment states that "the objectives of [Rockaway] regarding the Property include the recovery of the unpaid taxes, remediation of the site and placing the Property back on the tax rolls." The resolution also states:

WHEREAS, Mr. Mazzola plans to proceed with the foreclosure on the Property and the clean-up and rehabilitation of the site in a timely and professional manner;

---

[1] Mazzola's second personal statement was similar to his first. But, he added the following outline of his plans to refurbish the property: "A. Cut and trim overgrown weeds and landscape[,] B. Clean-up and paint exterior of the building[,] C. New Roof."

> WHEREAS, the Council finds that it is in the Township's best interest that the Tax Sale Certificate Number 23–90 for unpaid municipal taxes totaling $183,025.40, be assigned to Anthony J. Mazzola, d/b/a Mazzola's General Contracting because his intentions as written in his bid and as expressed verbally during the meetings on this matter, carry out the Council's objectives for the Property in a timely manner.

Kanter then filed this action and sought to restrain Rockaway, Lorraine Benderoth, Rockaway's tax collector, and Mazzola from perfecting the assignment of Tax Sale Certificate 23–90. Judge Barbara Zucker–Zarett denied Kanter's request for restraints pending a hearing. Following a hearing, Judge Zucker–Zarett found that the TSL afforded "lots of options" to Rockaway's Township Council with regard to accepting or rejecting bids. The judge noted that *N.J.S.A.* 54:5–114.2(b) specifically allows a municipality to reject a higher bid. Therefore, the judge upheld the assignment of the certificate and dismissed the complaint. Kanter moved unsuccessfully for reconsideration.

## II

■ On appeal, Kanter contends that: (1) Rockaway's assignment of the tax sale certificate to a lower bidder at a public auction is contrary to *N.J.S.A.* 54:5–114.2(b), as well as arbitrary and capricious; and (2) the tax sale certificate should be assigned to the highest bidder at the auction. We are not persuaded by these contentions. The language and intent of the TSL mandate an affirmance.

■ In construing a statute, we are required to " 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.' " *Wendling v. N.J. Racing Comm'n,* 279 *N.J.Super.* 477, 482, 653 *A.2d* 582 (App.Div.1995) (quoting *State v. Maguire,* 84 *N.J.* 508, 514, 423 *A.2d* 294 (1980)). Courts must give effect to the language employed by the legislative body. *Dixon v. Gassert,* 26 *N.J.* 1, 9, 138 *A.2d* 14 (1958).

■ We first look to the language of the statute to ascertain its plain meaning. *See Town of Morristown v. Woman's Club of*

*Morristown,* 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991). In pertinent part, subsection b provides:

> At the regular meeting of the governing body, . . . , the governing body may accept or reject any such bid as contained in such notice or may at such meeting *accept or reject any higher bid which may then be made by any person for said certificate of sale,* including subsequent municipal liens.
>
> [*N.J.S.A.* 54:5–114.2(b) (emphasis added).]

There is no requirement in the statute that the municipality must accept the highest bid. Nor, is there a requirement that if the municipality rejects the higher bid, then it must also reject the lower written bid. The Legislature put a "highest bidder" requirement into subsection a. However, there is no such requirement in subsection b. From this unambiguous language, it is clear that the governing body has the discretion to reject a higher bid.

Moreover, the clear objective of the Legislature was to vest such discretion in the governing body. In *Dvorkin, supra,* 29 *N.J.* at 311, 148 *A.*2d 793, the Supreme Court observed that *N.J.S.A.* 54:5–114.2 "had as its objective an added feature, namely, the return of the property to the paying tax rolls." This additional objective was accomplished by requiring mandatory foreclosure at the purchaser's expense within two years from the date of the tax sale certificate assignment. *Ibid.* (citing *N.J.S.A.* 54:5–114.4).

Consistent with those purposes, a governing body can take into consideration whether a bidder intends to occupy or improve the property. Such a bidder may be viewed as having a better potential for returning the property to the tax rolls or increasing the assessed value, as opposed to a bidder who may hold the tax sale certificate as an investment. Because the TSL is a remedial statute, it is to be liberally construed to effectuate its objectives. *N.J.S.A.* 54:5–3.

Here, the governing body concluded that Mazzola's bid, although lower in amount, was preferable because he intended to occupy and improve the property and remediate the soil contami-

nation problem.   In reaching its conclusion, the governing body was following the letter and spirit of *N.J.S.A.* 54:5–114.2(b).

Affirmed.