**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1405-15T3

CEDAR KNOLLS 2006, LLC,

    Appellant,

v.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

    Respondent.

_____

        Argued May 2, 2017 — Decided September 20, 2017

        Before Judges Rothstadt and Sumners.

        On appeal from the New Jersey Department of
        Environmental Protection.

        Jeffrey W. Cappola, argued the cause for
        appellant (Wilentz, Goldman & Spitzer, PA,
        attorneys; Mr. Cappola, on the brief).

        Kimberly A. Hahn, Deputy Attorney General,
        argued the cause for respondent (Christopher
        S. Porrino, Attorney General, attorney;
        Melissa H. Raksa, Assistant Attorney General,
        of counsel; Ms. Hahn, on the brief).

    The opinion of the court was delivered by

SUMNERS, J.A.D.

In accordance with the Brownfield and Contaminated Site Remediation Act (Brownfield Act), N.J.S.A. 58:10B-1 to -31, a "person" who owns contaminated property may be entitled to a Hazardous Discharge Site Remediation Fund Innocent Party Grant (innocent party grant) to pay for remediation of the property. The New Jersey Department of Environmental Protection (DEP) denied the request of plaintiff Cedar Knolls 2006, L.L.C. to receive an innocent party grant for property in the Township of Hanover based on the determination that Cedar Knolls did not qualify as a person under the Brownfield Act due to the manner in which it acquired the property. Having considered the arguments in light of the record and applicable law, we reverse.

In 1977, Robert Higginson purchased the property. When he passed away sixteen years later, he bequeathed the property to his wife, Evelyn, in two fifty-percent shares placed in two separate trusts.[1] Less than two years later, Evelyn assigned her respective shares in the property by putting one fifty-percent interest into Evelyn B. Higginson 1996 Qualified Seven Year Annuity Trust Agreement (Seven Year Trust) and the other fifty-percent interest into Evelyn B. Higginson 1996 Qualified Ten Year Annuity Trust

_____

[1] Our use of first names is for convenience because the individuals involved share a last name. We mean no disrespect.

(Ten Year Trust).  When the Seven Year Trust expired in 2003, the trustees transferred the trust's interest in the property to Evelyn's son, William.[2]  (Pa69).  In 2006, William transferred his interest in the property to the newly created Cedar Knolls.  And when the Ten Year Trust expired the same day that Cedar Knolls was created, the trustees transferred the remaining fifty-percent interest in the property from the trust to William, which he simultaneously transferred to the company.  Thus, Cedar Knolls became the sole owner of the property.

A little over nine years later, Cedar Knolls applied to the DEP for an innocent party grant to cover the costs to remediate the contaminated property.  To obtain a grant, Cedar Knolls had to meet the following requirements:

> A person qualifies for an innocent party grant if that person acquired the property prior to December 31, 1983 and continues to own the property until such time as the authority approves the grant, the hazardous substance or hazardous waste that was discharged at the property was not used by the person at that site, and that person certifies that he did not discharge any hazardous substance or hazardous waste at an area where a discharge is discovered.
>
> [N.J.S.A. 58:10B-6(a)(4).]

---

[2] Evelyn, William, and another individual were trustees of both trusts.

The DEP communicated a tentative decision to Cedar Knolls denying the application because the entity was not a "person" under the Brownfield Act who acquired the property prior to December 31, 1983.

Cedar Knolls sought reconsideration contending the property's transfer to trusts among family members - Robert to Evelyn to William to Cedar Knolls, which was solely owned by William - does not constitute a change of ownership, under the Industrial Site Recovery Act (ISRA), N.J.A.C. 7:26B-2.1(a)(17), and qualifies Cedar Knolls as a person under N.J.S.A. 58:10B-6(a)(4), as a result of Robert's purchase of the property in 1977. The DEP disagreed and issued a final agency decision rejecting the application. The agency determined that "Cedar Knolls is not the same 'person' that acquired the property prior to December 31, 1983[]" because the property was initially acquired by Robert, but is now currently owned in its entirety by Cedar Knolls. This appeal ensued.

Before us, Cedar Knolls contends the DEP has misinterpreted the law governing innocent party grants. It argues that it is a person under the Brownfield Act and there was no "change in ownership" as it has been since the sole owner of the property well before December 31, 1983, through Robert's 1977 acquisition that continued through the subsequent family transfers. We agree.

We begin with a review of the well-established applicable legal principles. "Generally we will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." In re Camden Cnty. Prosecutor, 394 N.J. Super. 15, 22-23 (App. Div. 2007) (internal quotations omitted) (quoting Cnty. of Gloucester v. Pub. Emp't Relations Comm'n, 107 N.J. Super. 150, 156 (App. Div. 1969) aff'd, 55 N.J. 333 (1970)). Although we "must give deference to [an] agency's findings of facts, and some deference to its 'interpretation of statutes and regulations within its implementing and enforcing responsibility,' we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (citations omitted).

To determine whether Cedar Knolls qualifies as a person that is entitled to an innocent party grant, we review the legislative history of the innocent party grants, which were created by Sections 27 and 28 of L. 1993, c. 139. Chapter 139 made significant amendments to what had been known as the Environmental Cleanup Responsibility Act (ECRA), L. 1983, c. 330, and, in the process, changed the act's name to ISRA. See Des Champs Labs., Inc. v.

Martin, 427 N.J. Super. 84, 96 (App. Div. 2012). In addition to amending and renaming ECRA, Chapter 139 contained new sections, including Sections 27 and 28, which were allocated to N.J.S.A. 58:10B-5 and —6, respectively. Pursuant to Section 1 of L. 1997, c. 278, Sections 23 through 43 and Section 45 of Chapter 139 were designated as the Brownfield Act. Consequently, ISRA and the Brownfield Act are part of a unified legislative strategy to address the remediation of contaminated sites.

With respect to changes in ownership of property that triggered ISRA, Chapter 139 defined a transfer in ownership to include "any transaction or proceeding through which an industrial establishment undergoes a change in ownership." It also contained the following definitional sections for purposes of ISRA:

"Change in ownership" means:

(1) the sale or transfer of the business of an industrial establishment or any of its real property;

(2) the sale or transfer of stock in a corporation resulting in a merger or consolidation involving the direct owner or operator or indirect owner of the industrial establishment; [or]

(3) the sale or transfer of stock in a corporation, or the transfer of a partnership interest, resulting in a change in the person holding the controlling interest in the direct owner or operator or indirect owner of an industrial establishment;

. . . .

"Change in ownership" shall not include:

(1) a corporate reorganization not substantially affecting the ownership of the industrial establishment;

(2) a transaction or series of transactions involving the transfer of stock, assets or both, among corporations under common ownership, if the transaction or transactions will not result in the diminution of the net worth of the corporation that directly owns or operates the industrial establishment by more than 10%, or if an equal or greater amount in assets is available for the remediation of the industrial establishment before and after the transaction or transactions;

(3) a transaction or series of transactions involving the transfer of stock, assets or both, resulting in the merger or de facto merger or consolidation of the indirect owner with another entity, or in a change in the person holding the controlling interest of the indirect owner of an industrial establishment, when the indirect owner's assets would have been unavailable for cleanup if the transaction or transactions had not occurred; [or]

(4) a transfer where the transferor is the sibling, spouse, child, parent, grandparent, child of a sibling, or sibling of a parent of the transferee[.]

[N.J.S.A. 13:1K-8.]

Although these definitional sections are not among the parts of Chapter 139 that became the Brownfield Act, they nevertheless

reflect the Legislature's concerns with respect to changes of ownership at the time the innocent party grants were established.

In construing a statute, "[w]e are required to 'effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Wendling v. N.J. Racing Comm'n, 279 N.J. Super. 477, 482 (App. Div. 1995) (quoting State v. Maguire, 84 N.J. 508, 514 (1980)). Courts "must give effect to the language employed by the legislative body." Dixon v. Gassert, 26 N.J. 1, 9 (1958).

Our review of the legislative history and the language of the statutes leads us to reverse the DEP's final agency decision, which in essence would have us find that a transfer of a property solely among parents and a child through the vehicle of trusts does not qualify as a property eligible for a remediation innocent party grant. Innocent party grants were clearly intended to help the owners of a contaminated property defray the costs of remediation if they were not responsible for the contamination and had acquired the property prior to enactment of ECRA in 1983, assuming they satisfied the other requirements. As remedial statutes, we liberally construe ISRA and the Brownfield Act to effectuate their important social goals. N.J.S.A. 13:1K-7; and N.J.S.A. 58:10B-1.2; See In Re Robert Mitchell Center, 223 N.J. Super. 166, 173 (1988).

The definitional section concerning changes of ownership in N.J.S.A. 13:1K-8, especially with respect to what is not a change of ownership, reflects the Legislature's concern that there be a basic continuity of beneficial ownership between the entities, retention of the prior entity's liability by the resulting entity, and preservation of the prior entity's available assets by the resulting entity to meet its remediation responsibilities. Nevertheless, ISRA allows for corporate mergers, inter-corporate transfers, gifts or inheritance among family members, and other types of transfers.

In short, the Legislature appears to have been more concerned with the substance of ownership and continuity than the technicalities of the legal form. Hence, the transfers to Cedar Knolls qualifies it as a "person" under N.J.S.A. 58:10B-6(a)(4), to receive an innocent party grant to remediate the property.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1405-15T3