410 So.2d 802 (1982)
Ronald BRILEY, Plaintiff-Appellant,
v.
LOUISIANA STATE RACING COMMISSION; C. L. Bubba Webb; E. J. Hessler, Jr. and Charles Ashy, Defendants-Appellees.
No. 8634.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1982.
Rehearing Denied March 23, 1982.
Stacey Moak, Baton Rouge, and Preston N. Aucoin, Ville Platte, for plaintiff-appellant.
William J. Guste, Jr., Warren E. Mouledoux and John E. Jackson, Jr., New Orleans, for defendants-appellees.
Before CULPEPPER, FORET and CUTRER, JJ.
CUTRER, Judge.
This appeal arises from the trial court's affirmance of the Louisiana State Racing *803 Commission's imposition of sanctions upon Ronald Briley for the violations of its rules and regulations.
The racing Stewards for the Evangeline Downs horse racing track of Lafayette, Louisiana, suspended Ronald and Tom Briley from racing horses at any track in Louisiana. The Stewards ruled that three horses from the Briley stables were administered an illegal drug prior to their entry into three races on August 23, 1973. This suspension was appealed by Ronald Briley[1] to the Louisiana Racing Commission (Commission). The Commission, after a hearing, upheld the ruling of the Stewards and imposed a suspension of three years. From this ruling, Ronald Briley appealed to the district court which affirmed the Commission's actions. Ronald Briley appealed the district court judgment. We affirm.
The facts presented in this case are:
Ronald Briley is owner of Briley Stables where horses are boarded and trained for racing. Tom Briley was employed by Ronald as a trainer. Both Ronald and Tom were licensed by the Commission as trainers. The Briley Stables were training three horses prior to the August 23, 1973 racing date. Two of the horses were registered to Ronald as trainer and the other was registered to another employee as trainer. About a month before August 23, 1973, these three horses ("A Going Doll," "Easy Roge" and "Rockity's Girl") were transferred to Tom as trainer. This transfer was approved by the Stewards of Evangeline Downs. According to Ronald, this transfer was made to Tom because, by doing so, the horses would each be assigned to a separate race. By running in separate races the same jockey could ride each of the horses.
On August 23, 1973, the three horses were entered into the separate races, those being the fourth, fifth and sixth races. Each horse finished third. Following the race the first, second and third place horses (win, place, show) of each race were taken to the testing barn where urine samples were taken. This is a "split sample," in that, part of the urine is marked, frozen and kept at the track and the other part is sent to the Commission's chemist at the Shilstone Testing Laboratory in New Orleans for testing. The tests conducted by Shilstone revealed that each of the Briley trained horses had been administered an amphetamine before their races. The Stewards relayed the findings to Ronald and Tom Briley during the hearing held on August 27-31. Neither the findings of Shilstone nor the authenticity of the samples were questioned by the Brileys.
The Stewards ruled that both Ronald and Tom were trainers within the rules of the Commission, due to their connexity with the training of horses, and both violated those rules as prohibited drugs were found in the horses' urine samples. Both men were suspended by the Stewards who concluded that Tom, as record trainer, and Ronald, as director of the overall operations of the stable, must be jointly accountable. Ronald suspensively appealed to the Commission. The ten-day hearing requirement was waived and the suspension hearing came before the Commission on October 31 and November 21, 1973.
After the hearing, the Commission upheld the Stewards' ruling and ordered Ronald Briley's license suspended for three years beginning November 21, 1973.
Ronald appealed the ruling to the district court. The Commission granted a stay of the suspension pending appeal. Various pleadings were filed in the district court. Judgment was finally rendered by the district court on February 14, 1977. A motion for a new trial was filed, which was never heard, but was dismissed by agreement of both parties on April 3, 1981. A second motion for a new trial was thereafter filed and such was dismissed on June 30, 1981. This suspensive appeal was then taken by Ronald.
The issues on appeal arise out of Ronald Briley's contention that the procedure administered by the Commission deprived him of due process and was thus unconstitutional.
*804 Briley further pleads the unconstitutionality of the following statutes:
(A) LSA-R.S. 4:150(A) which makes the trainer of a horse an insurer of the condition of the horse's condition;
(B) LSA-R.S. 4:155 authorizing the Commission to impose penalties for rule violations. In the alternative, if the statute is constitutional, the Commission imposed the penalty in an arbitrary manner.

COMMISSION PROCEDURE
The Stewards notified Ronald Briley that he was charged with the violation of Rule 6(s) of the Rules of Racing. The Stewards suspended Ronald for the violation of such rule. The Commission, after a hearing, found that Briley had violated both Rules 6(s) and 6(p). Counsel contends that the ruling of the Commission violates LSA-R.S. 49:951, et seq. (LSA-R.S. 4:154 provides that the Commission hearings, practice and procedure were governed by the Administrative Procedure Statute LSA-R.S. 49:951, et seq.)
LSA-R.S. 49:955 provides, in part, as follows:
"A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.

"B. The notice shall include:
* * * * * *

(3) A reference to the particular sections of the statutes and rules involved;

"C. Opportunity shall be afforded all parties to respond and present evidence of all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts." (Emphasis added.)
LSA-R.S. 49:961 C provides as follows:
"C. No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined. Acts 1966, No. 382, § 11, eff. July 1, 1967."
As we consider the procedural requirements of these provisions, we conclude, as did the trial court, that the Commission was in error in basing its ruling upon the violation of both Rule 6(p) and Rule 6(s). The Stewards had only charged that Briley had violated Rule 6(s). Briley was not put on notice that he was being charged under Rule 6(p).
Rule 6(p) provides as follows:
"No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of, any drug to any horse entered for a race, which is of such character as could affect the speed of the horse in such race. Every Owner, Trainer or Groom must guard, or cause to be guarded, each horse owned, trained or attended by him in such manner as to prevent any person or persons from administering to the horse, by any method, any drug prior to the time of the start of the race which is of such character as to affect the speed of the horse in such race.

"When a report is received from the State Chemist reflecting in his expert opinion that the chemical analysis of blood, saliva, urine, or other samples taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant or analgesic, local anesthetic or drugs of any description this shall be taken as prima-facie evidence that such had been administered to the horse. Such shall also be taken as prima facie evidence that the owner, and/or trainer, and/or groom has/have been negligent in handling of the horse.

*805 "The owner, and/or trainer, and/or groom, and/or other person, shall be permitted to interpose reasonable and legitimate defenses before the Stewards and the Racing Commission." (Emphasis added.)
Rule 6(s) provides as follows:
"Should the chemical analysis of any sample of the blood, saliva, urine, or other excretions of body fluids of any horse so analyzed contain any narcotic, stimulant, depressant, local anesthetic, analgesic, or drugs of any description, the trainer of the horse may, after a hearing of the Stewards, be suspended or ruled off, if the Stewards conclude that the drug contained in the sample could have produced analgesia in, stimulated, or depressed the horse or could have masked or screened a drug that could have produced analgesia in, stimulated or depressed the horse. The stable foreman, groom, and any other person shown to have had the care or attendance of the horse may be suspended, or ruled off. The owner or owners of a horse so found to have received such administration shall be denied, or shall promptly return, any portion of the purse or sweepstakes and any trophy in such race, and the same shall be distributed as in the case of a disqualification."
An examination of the above rules reveals that the error of the Commission, in basing their finding upon the violation of Rule 6(p) as well as Rule 6(s), was a harmless error. The evidence presented in the record fully supports a finding that Rule 6(s) was violated and the ensuing suspension was proper. The ruling of the trial judge in this regard shall be affirmed.
Counsel for Ronald Briley generally complains of other procedural errors, which contentions have no merit. The procedural requirements of LSA-R.S. 49:961, et seq., have been met by the Commission. Ronald was notified of the charges and given ample opportunity to have urine tests made by an expert of his choice. This right to test was waived. Ronald presented his case to the Commission where evidence was adduced and witnesses testified. He was represented by legal counsel in all steps of the proceedings. Failure of Ronald to prove his case does not prove a denial of due process.
Ronald also contends that a horse could only have one trainer. He urges that since his brother, Tom (who plead no contest to violations of the rules concerning drugging), was the program trainer, he could not be subjected to a suspension. Neither the statute nor the rules exclude the possibility of more than one trainer. The finding of the Commission that Ronald was also a trainer of the horses will not be disturbed on appeal.
We find, from a perusal of the record, substantial evidence to uphold the finding of the Commission and its affirmance by the trial court. The findings and decision of the Commission and trial court are not manifestly erroneous and are, therefore, affirmed.

TRAINER: ABSOLUTE INSURER LSA-R.S. 4:150(A)
Plaintiff alleges that the provision in Section 150(A) which states: "The granting of a license to a trainer shall make him responsible for and be the absolute insurer of the condition of the horses he enters regardless of the acts of third parties," creates an irrebuttable presumption of guilt and is thus unconstitutional in its application. Section 150(A) applies equally to all trainers; they shall be the absolute insurer of the condition of the horses regardless of the acts of third parties. This is consistent with the legislative intent and policy with which Rule 6(s) is in accord. Also, the provision (trainers are absolute insurers) has a rational basis and is reasonably related to the governmental interest sought to be advanced by it. Even if one argues that a separate classification exists (trainers rather than someone else being absolutely liable) "the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Dept. of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). The governmental interest is to insure honest and safe races as *806 well as to protect the integrity of the industry and its source of revenues generated from the activity. The burden being placed on the trainers, who have control of the horses before and after the race, is not so onerous as to be unconstitutional. When one weighs the control of the trainer, his grooms and jockey and their ability to prevent tampering with the horse, with the safety and integrity of the industry and public fisc, no one is in a better position to bear the obligation than the trainer. A substantial governmental purpose is served. To merely disqualify the horse and not penalize the trainer would not, in all likelihood, give much impetus in preventing the drugging of horses. However harsh the rule, it is applied equally to all trainers and therefore is not unconstitutional in its application.

PENALTY DETERMINATION AND APPLICATION LSA-R.S. 4:155
Ronald Briley urges the unconstitutionality of LSA-R.S. 4:155 (as it appears when these offenses were committed) in that it allows an unequal application of the law as the provision does not set out any specific penalties for its violation. The statute provides as follows:
"§ 155. Commission authority, fines, suspensions, revocations, forfeitures and disciplinary actions.
The commission may impose upon a licensee a fine not exceeding $5,000.00 and may suspend a license indefinitely or both.

Any commission action taken herein shall be consistent with the provisions of this Part"[2]
It is true that the statute does not set out any specific penalty for a specific violation; however, the determination of a fine or other penalty is vested in the Commission subject to judicial review for abuses of discretion. Here the penalty given, three years suspension, is not an abuse of discretion and is not constitutionally excessive.[3]
*807 The flexibility of the statute in allowing the Commission to look to all the evidence and consider all the surrounding circumstances before imposing a fine or penalty, once all due process and equal protection considerations are met, subject to judicial review, meets the legislative intent and policy, is uniform in its application and effect, and, is constitutional in its application. To hold otherwise would be to mandate the same penalties for a similar violation regardless of its frequency of occurrence and/or severity. We hold, therefore, that LSA-R.S. 4:155 is constitutional and does not allow an unequal application of the law.
Ronald Briley further alleges that the penalty provision was unconstitutionally applied to him in that the Commission did not deliberate before imposing its penalty. Our perusal of both the racing and administrative procedure statutes does not reveal the requirement that the agency have some formal deliberation before imposing a penalty. The hearing in this case spanned two different dates, October 31 and November 21, 1973. The Commission members, well versed in the racing industry, had the Stewards' report, the testimony of the various witnesses for both sides and the opportunity to judge their credibility, the laboratory results, and all other facts surrounding this case at their disposal when deciding the case and imposing the penalty. Although the Commission approved the penalty without deliberation, we cannot say this was an unconstitutional abuse of power of application of the penalty provision.
Should the Commission be ordered to hold a pro forma deliberation in order to impose the same penalty? We think not. If there was any abuse of discretion by the Commission it is subject to rectification on appeal. The trial court found no such abuse, and with its finding, we agree. The Commission did not deviate from the policy and intent of its constitutional delegation of power from the Legislature. Administrative procedure requires that the final decision be in writing or stated in the record. Both were done, and the plaintiff was notified by a formal decision of the Commission. It would be incongruous to render nugatory a valid agency determination for lack of a pro forma deliberation. Plaintiff's contention is without merit.
The trial court judgment is imminently correct and will be affirmed. It is further ordered that the three year suspension of Ronald Briley shall become effective upon final judgment of this court. Ronald Briley is to pay all costs of this appeal.
AFFIRMED.
FORET, J., dissents with reasons.
FORET, Judge, dissenting.
I do not believe that the statutes under which plaintiff's trainers license was suspended pass constitutional muster.
LSA-R.S. 4:150 A states that:
"The granting of a license to a trainer shall make him responsible for and be the absolute insurer of the condition of the horses he enters regardless of the acts of third parties..."
Plaintiff alleges that this statutory provision creates an irrebuttable presumption of guilt and is thus unconstitutional in its application. I tend to agree.
NOTES
[1] Tom Briley pleaded "no contest." No appeal was taken on his behalf.
[2] Section 155 was amended by the Legislature in 1978. It now reads as follows:

"The commission may impose upon a licensee a fine not exceeding ten thousand dollars and may suspend a license indefinitely, or both. Any commission action taken herein shall be consistent with the provisions of this Part."
This section merely increases the maximum fine which can be imposed, however, it leaves the imposition of penalties to the discretion of the commission.
[3] Ronald Briley had a record of several violations of racing rules where sanctions had been imposed. These past violations were as follows:

"6/18/68 Evangeline Downs, La.: Fined $25 for taking horse to gate prior to running of 8th race, 6/14 without the proper equipment. (34:32:239)
9/19/68 Evangeline Downs, La.: Fined $25 for sending horse to gate 9/12 without the proper equipment. (34:54:447)
8/4/72 Evangeline Downs, La.: Fined $25 for failing to have foal papers of his entry, "Iris Bar," 3rd race, 8-4, on file with the Racing Secretary; causing a late scratch of horse. (38:49:434)
8-5-72 Evangeline Downs, La.: Fined $50 for failure to have foal papers of his entry, "Roman Patrol," 7th race, 8-5, on file with Racing Secretary; causing a late scratch of horse. (38:49:434)
9-8-72 Evangeline Downs, La.: Following a report from the Shilstone Testing Laboratory, official chemist for the LSRC, that the urine sample taken from the 3 year old colt "Custus Dandy Man", trained by him, winner of 3rd race on 9-1, proved positive for the drug Amphetamine and/or a derivative thereof, the Stewards concluded that the drug contained in the sample could have produced analgesia in, stimulated or depressed the horse or could have masked or screened a drug that could have produced analgesia in, stimulated or depressed the horse and could have affected the performance or speed of the horse. Trainer Briley having been given a hearing on 9-8 conducted by Stewards of Evangeline Downs is suspended pursuant to the Louisiana SRC's Rules of Racing, rule # 6 paragraphs (p) and (s) and his case is referred to the Commission with recommendation that he be suspended for sixty (60) days; 9-9 thru 11-7. Trainer Ronald Briley is denied access to all race tracks under the jurisdiction of the LSRC and horses trained and owned by him are refused entry until such time as their transfer is approved by the Stewards. The purse money for the 3rd race, 9-1, is ordered redistributed as follows: 1st, "Bad Bandit"; 2nd, "Zeff Walters"; 3rd "Green Goddess"; 4th "Becky's Bounder" and 5th "Cause Ima Rebel". The pari-mutuel payoff is in no way affected by this ruling. (38:61:563 & 564) 9-21-72 Louisiana SRC: Ruling of Stewards dated 9-8 is upheld and he is suspended 60 days, 9-9 thru 11-7, and is denied access to all race tracks under the supervision of the Louisiana SRC. (38:63:576)
4-25-73 Evangeline Downs, La.: Fined $100 for a change of equipment on his entry in 2nd race, 4-22, without permission from the stewards. (39:32:187)
8-3-73 Evangeline Downs, La.: Fined $50 for making entry of an ineligible horse. (39:62:458)"