United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-51431
Summary Calendar

---

JAMES C. HUDSON,

Plaintiff-Appellant,

versus

TEXAS RACING COMMISSION,

Defendant-Appellee.

---

Appeal from the United States District Court for
the Western District of Texas

---

Before REAVLEY, JOLLY and OWEN, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal involves an issue of first impression, whether the Texas absolute

insurer rule, 16 TEX. ADMIN. CODE § 311.104(b), which provides, inter alia, that

"[a] trainer shall ensure that a horse . . . that runs a race while in the care and

1

custody of the trainer . . . is free from all prohibited drugs, chemicals, or other substance," violates the due process clause.  We hold that it does not and therefore affirm the judgment of the district court.

I.

James Hudson is licensed by the Texas Racing Commission (the "Commission") as an owner and trainer of race horses.[1]  On June 8, 2002, the horse named St. Martin's Cloak, which was owned and trained by Hudson and in his

---

[1] Horse racing came to Texas with the passage of the Texas Racing Act ("the Act") in 1986.  See Acts 1986, 69th Leg., 2nd C.S., ch. 19, § 1.  The express purpose of the Act is "to provide for the strict regulation of horse racing and greyhound racing and the control of pari-mutuel wagering in connection with that racing."  TEX. REV. CIV. STAT. ANN. ART. 179e, § 1.02 (Vernon Supp. 2005).  A Commission was created and the Act mandated that

> [t]he commission shall regulate and supervise every race meeting in this state involving wagering on the result of greyhound or horse racing.  All persons and things relating to the operation of those meetings are subject to regulation and supervision by the commission.  The commission shall adopt rules for conducting greyhound or horse racing in this state involving wagering and shall adopt other rules to administer this Act that are consistent with this Act.  The commission shall also make rules, issue licenses, and take any other necessary action relating exclusively to horse racing or to greyhound racing.

*Id.* § 3.02(a).  The Act permits the commission or a section of the commission to appoint a committee of experts, members of the public, or other interested parties to advise the commission or a section of the commission about a proposed rule.  *Id.* § 3.02(f).  The Act further mandates that the commission, in adopting rules and in the supervision and conduct of racing, shall consider the statewide effect of a proposed commission action on the state's agricultural, horse breeding, and horse training industries.  *Id.* § 3.02(g).

custody and care, finished first in the sixth race at Lone Star Park, thereby earning a share of the purse money. A post-race urine sample obtained from St. Martin's Cloak tested positive for Torsemide, a prohibited drug. A split sample analyzed by Louisiana State University also tested positive for Torsemide.

Hudson received notice that the Board of Stewards (the "Stewards") at Lone Star Park would conduct a hearing. Hudson participated in the hearing along with his counsel. Following the hearing, the Stewards suspended Hudson for sixty days, declared St. Martin's Cloak unplaced in the race, and ordered that the purse money won by St. Martin's Cloak be redistributed. Hudson timely appealed the Stewards' ruling to the Commission.

A hearing was conducted before an administrative law judge ("ALJ"). The ALJ determined that a prima facie case was made that St. Martin's Cloak participated in a race with a prohibited drug in its body, in violation of Commission rules. The ALJ determined that it was irrelevant that there was no evidence of Hudson's intent or overt act in administering the Torsemide. The ALJ further determined that the facts supported a finding that the absolute insurer rule had been violated. The ALJ recommended that the ruling of the Stewards should be upheld.

The Commission adopted the ALJ's findings and upheld the Stewards' ruling. Hudson then filed a petition in a Texas state district court seeking judicial review of

the Commission's decision.  He claimed that, <u>inter alia</u>, that the absolute insurer rule violated the due process clause.

The Commission timely removed the action to federal district court.  The district court, proceeding sua sponte, granted summary judgment in favor of the Commission on Hudson's federal constitutional claims.  The district court determined, <u>inter alia</u>, that the absolute insurer rule did not violate due process.  This appeal followed.

II.

The sole issue on appeal is whether the Texas absolute insurer rule, 16 TEX. ADMIN. CODE § 311.104(b), both facially and as applied, violates the due process clause.  Hudson argues that the district court erred in granting summary judgment in favor of the Commission on his claim that the absolute insurer rule violates due process.

Section 311.104(b) of the Texas Administrative Code, entitled "Absolute Insurer," provides:

> (1) A trainer shall ensure the health and safety of each horse or greyhound that is in the care and custody of the trainer.
>
> (2) A trainer shall ensure that a horse or greyhound that runs a race while in the care and custody of the trainer or kennel owner is free from all prohibited drugs, chemicals, or other substances.

4

(3) A trainer who allows a horse or greyhound to be brought to the paddock or lockout kennel warrants that the horse or greyhound:

    (A) is qualified for the race;

    (B) is ready to run;

    (C) is in a physical condition to exert its best efforts; and

    (D) is entered with the intent to win.[2]

Hudson claims that the absolute insurer rule, facially and as applied to him, violates due process. He argues that the rule "creates a conclusive, mandatory, and irrebuttable" presumption that a trainer has committed a violation when a horse tests positive for a prohibited substance, irrespective of who actually administered the drug to the horse or the intent of the trainer. Hudson contends that the rule deprives a trainer of the right to negate his responsibility regarding administration of a prohibited drug.

To establish a due process violation under 42 U.S.C. § 1983, Hudson must first show that he was denied a constitutionally-protected property right.[3] This court

---

[2] 16 TEX. ADMIN. CODE § 311.104(b). All references to Texas law are to provisions in force in 2002, when Hudson's violation and the related hearing took place.

[3] See Bryan v. City of Madison, 213 F.3d 267, 274-75 (5th Cir. 2000).

has held that such property rights must be established by state law.[4]

The Supreme Court has determined that a horse trainer licensed in New York had a property interest in his racing license.[5] Examining New York law, the Court noted that a racing license "may not be revoked or suspended at the discretion of the racing authorities."[6] The Court determined that "state law has engendered a clear expectation of continued enjoyment of a license absent proof of culpable conduct by the trainer."[7] This gave the trainer a "legitimate claim of entitlement . . . that he may invoke at a hearing."[8]

This court has not addressed whether a horse trainer licensed by the Commission has a constitutionally-protected property right. Certain provisions of

---

[4] Id. at 275. The Commission questions whether Hudson has a property right in his racing license sufficient to merit the protections of due process. They note, that under state law, participation in racing is a privilege rather than a right. The distinction between rights and privileges, however, does not control the issue. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S. Ct. 2701, 2706, 30 L.Ed.2d 548 (1972) (stating that the Supreme Court "has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights.").

[5] See Barry v. Barchi, 443 U.S. 55, 64 & n.11, 99 S. Ct. 2642, 2649, 61 L.Ed.2d 365 (1979).

[6] Id. at 64 n.11, 99 S. Ct. at 2649 n.11.

[7] Id.

[8] Id. (internal quotation marks and citation omitted).

Texas law, however, lead us to conclude that such a right exists. The Texas Administrative Code provides that a license issued by the Commission may be denied, suspended, or revoked after notice and a hearing.[9] Section 311.6(b) enumerates several grounds for the denial, revocation, and suspension of racing licenses, including, among others, violations of racing rules, a felony conviction, a conviction of a crime of moral turpitude that is reasonably related to the licensee's fitness to hold a license, and providing false information in a license application. Based on the above provisions, we conclude that Hudson has a protected property interest in his racing license. See Barry, 443 U.S. at 64 & n.11, 99 S. Ct. at 2649 & n.11.

We turn to Hudson's two substantive due process arguments. Hudson first argues that § 311.104(b) violates substantive due process because it creates an irrebuttable presumption of fault. He contends that whenever a prohibited substance is found in a horse's system, the absolute insurer rule creates an irrebuttable presumption that the trainer of the horse administered the substance. We disagree. The absolute insurer rule, as it name implies, makes a trainer of a horse that is entered in a race the absolute insurer that the horse is free from all prohibited substances. No presumption of trainer fault is created when the presence of a

---

[9] 16 TEX. ADMIN. CODE § 311.6(a).

prohibited substance is found.  The absolute insurer rule does not assign fault, but instead, requires the trainer to bear the responsibility of the horse's condition, as a contingency to being licensed as a trainer by the state.

Hudson also argues that the absolute insurer rule violates substantive due process because it subjects a trainer to disciplinary action without a showing of wrongdoing.  In essence, Hudson contends that the state lacks the power to impose absolute liability.  This argument is also without merit.  It has long been held that due process does not require proof of guilty knowledge before punishment may be imposed.[10]  In areas of activity requiring strong police regulation to protect public interests, strict liability may be imposed upon individuals "otherwise innocent but standing in responsible relation to a public danger."[11]  Horse racing requires strong police regulation to protect the public interests.[12]

Because horse raising for money can be prohibited all together in Texas, the

---

[10] See, e.g., United States v. Balint, 258 U.S. 250, 252-53, 42 S. Ct. 301, 302-03, 66 L.Ed. 604 (1922); United States v. Ayo-Gonzalez, 536 F.2d 652, 657 (5th Cir. 1976) (stating that due process is not violated merely because mens rea is not a required element of a prescribed crime).

[11] United States v. Dotterweich, 320 U.S. 277, 281, 64 S. Ct. 134, 136-37, 88 L.Ed. 48 (1943).

[12] Western Turf Ass'n v. Greenberg, 204 U.S. 359, 363-64, 27 S. Ct. 384, 386, 51 L.Ed. 520 (1907).

legislature may condition a license to engage in legalized racing upon compliance with any regulation that is reasonably appropriate to the accomplishment of the Act. To ensure the health of the horse, to protect the integrity of the sport, and to protect the betting public, the state has a valid objective in seeking to prevent the doping of horses. The absolute insurer rule for horse trainers is a reasonable and valid exercise of the state's police power to achieve that objective.[13]

---

[13] A Michigan appellate court upheld an absolute insurer provision based on a due process challenge on the following grounds: "Horse racing is accompanied by legalized gambling, making the activity especially susceptible to fraud and corruption. Strong regulation protects not only the wagering public but also advances the state's economic interests in the racing business by preserving public confidence in the activity." Berry v. Mich. Racing Comm'r, 321 N.W.2d 880, 884 (Mich. Ct. App. 1982). Addressing due process concerns, the Michigan court continued:

> Due process would not forbid a complete ban on horse racing as a legalized form of gambling. The imposition of strict liability is reasonable because the trainer is the person best able to prevent illegal drugging. The insurer rule provides maximum protection against illegal drugging; arguably it is the only practical means of reducing such corrupt practices. If, as plaintiff proposes, we were to conclude that due process necessitates a finding of guilty knowledge or intent prior to the imposition of sanctions, enforcement of the prohibition on horse drugging would be virtually impossible, and the interests of the public and state would go unprotected. The insurer rule is a reasonable alternative to either leaving those interests unprotected or forbidding legalized racing.

Id. (internal citation omitted).

The majority of jurisdictions have upheld the same or similar absolute insurer rule.[14]  Illinois and Maryland are the only jurisdictions that have held the absolute insurer rule to be unconstitutional.[15]  We agree with the majority of jurisdictions that the absolute insurer rule does not violate due process.  While the absolute insurer rule may be harsh, it is constitutional.

### III.

We affirm the judgment of the district court because (1) Hudson has not shown that the Texas absolute insurer rule establishes an irrebuttable presumption of guilt, and (2) the absolute insurer rule is a reasonable regulation that does not violate due process either facially or in its application to Hudson.

AFFIRMED.

---

[14] See Div. of Pari-Mutual Wagering v. Caple, 362 So.2d 1350, 1354-55 (Fla. 1978); O'Daniel v. Ohio State Racing Comm'n, 307 N.E.2d 529 (Ohio 1974); Jamison v. State Racing Comm'n, 507 P.2d 426 (N.M. 1973); State v. W. Va. Racing Comm'n, 55 S.E.2d 263 (W. Va. 1949);  Sandstrom v. Cal. Horse Racing Bd., 189 P.2d 17 (Cal. 1948); DeGroot v. Ariz. Racing Comm'n, 686 P.2d 1301 (Ariz. Ct. App. 1984); Briley v. La. State Racing Comm'n, 410 So.2d 802 (La. Ct. App. 1982); Dare v. State, 388 A.2d 984 (N.J. Super. Ct. App. Div. 1978); Fioravanti v. State Racing Comm'n, 375 N.E.2d 722 (Mass. App. Ct. 1978).

[15] See Brennan v. Ill. Racing Bd., 247 N.E.2d 881 (Ill. 1969);  Mahoney v. Byers, 48 A.2d 600 (Md. 1946).  We note that Mahoney was distinguished by Goldman v. Maryland Racing Commissioner, 584 A.2d 709 (Md. App. 1991).