# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 3, 2007

Charles R. Fulbruge III
Clerk

No. 06-61104
Summary Calendar

CASINO AIRPORT SHUTTLE, INC

Plaintiff - Appellant

v.

GULFPORT-BILOXI REGIONAL AIRPORT AUTHORITY;  BRUCE
FRALLIC, Individually and as an agent for Gulfport-Biloxi Regional Airport
Authority

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:04-CV-829

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Casino Airport Shuttle, Inc. ("CAS") appeals the district court's grant of
the defendant's motion for summary judgment.  We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I. FACTS AND PROCEEDINGS

The Gulfport-Biloxi Regional Airport Authority ("GBRAA") is a regional airport authority chartered pursuant to Mississippi law. The GBRAA's Rules, Regulations and Fees were amended on May 2, 2001 to reflect a new contract shuttle classification for ground transportation. The GBRAA developed the classification to alleviate problems with incompetent and overpriced transportation services from the airport. Contract shuttles were required to have an agreement with the destination point to provide service to that property. Some destinations authorized more than one shuttle company to pick up or drop off at the destination, but others authorized a specific shuttle to carry only voucher passengers, while still permitting all to drop off cash customers.

CAS is a business entity which obtained a written permit to provide shuttle transportation from the Gulfport-Biloxi International Airport effective January 3, 2001. In a memorandum posted September 25, 2001, the GBRAA stated that CAS could operate to Beau Rivage Resort & Casino ("Beau Rivage") and Keesler Air Force Base ("Keesler"), among other destinations, pursuant to agreements between CAS and the destinations. However, after receiving an executed contract between Beau Rivage and Hotard Coaches Inc. ("Hotard") on November 6, 2001, the GBRAA posted a memorandum that Hotard was given all voucher and cash shuttle rides to Beau Rivage. On November 14, 2001, the GBRAA received a letter from Keesler stating that Hotard had obtained a contract to be the only authorized carrier for the facility. The GBRAA posted another memorandum reflecting the change.

Nearly two years later, on July 11, 2003, after receiving correspondence from Beau Rivage and Keesler stating that CAS was authorized to transport customers to those destinations, the GBRAA posted a memorandum reflecting the change. At no time was CAS's permit to carry passengers to or from the airport revoked or suspended.

CAS filed suit in Mississippi state court on April 23, 2004. The action was removed to the United States District Court for the Southern District of Mississippi, Gulfport Division on November 12, 2004. After removal, CAS sought to amend its complaint to add a claim under 42 U.S.C. § 1983 that its due process rights had been violated. On March 15, 2006, the district court granted the defendants' motion for summary judgment on the § 1983 claim and remanded the state law claims. On August 6, 2006, the district court denied CAS's motion for reconsideration.

CAS timely appealed.

## II. STANDARD OF REVIEW

In reviewing a grant of summary judgment by the district court, this court examines "the record under the same standards as used by the trial court." Moore v. Mississippi Valley State Univ., 871 F.2d 545, 548 (5th Cir. 1989). "Affirmance of a summary judgment ruling requires that we be convinced, after an independent review of the record, that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Id. at 548–49 (internal quotations omitted). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of New York, 423 F.3d 460, 465 (5th Cir. 2005).

## III. DISCUSSION

CAS claims that its continued use of two airport shuttle routes was a constitutionally protected property interest and that it was deprived of this property interest without due process of law required by the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To remedy deprivations of federal rights, 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"The threshold question under § 1983 is whether the complainant has been deprived of a cognizable liberty or property interest." Jackson v. Reese, 608 F.2d 159, 160 (5th Cir. 1979). "This court has held that such property rights must be established by state law." Hudson v. Texas Racing Comm'n, 455 F.3d 597, 599 (5th Cir. 2006).

CAS concedes in its brief that the business permit did not give it "rights to provide airport shuttle services to certain destinations." However, CAS contends that the September 25, 2001 letter from the GBRAA listing CAS as operating to Beau Rivage and Keesler grants it property rights to operate shuttles to those destinations. CAS argues that under its permit the GBRAA could only revoke its rights under certain conditions which were not met.

CAS unpersuasively cites several cases for the proposition that a license, employment, and benefit may be a property interest. In Barry v. Barchi, the Supreme Court held that a plaintiff had a property interest in a horse trainer's license because "under New York law, [the] license could have been suspended only upon a satisfactory showing that his horse had been drugged and that he was at least negligent in failing to prevent the drugging." 443 U.S. 55, 64 (1979). In Bishop v. Wood, the Court affirmed a reading of North Carolina law that a policeman did not have a property interest in his employment protected by the Fourteenth Amendment. 426 U.S. 341, 344–47 (1976). In Perry v. Sindermann, the Court held that a junior college teacher had a property interest in continued employment despite having no written contract with an explicit tenure provision where the teacher "alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim

4

of entitlement to continued employment absent sufficient cause." 408 U.S. 593, 601–03 (1972) (internal quotations omitted). In Board of Regents of State Colleges v. Roth, the Court held that a university professor had no property interest in his employment where there was no provision for renewal at the termination of his employment. 408 U.S. 564, 578–79 (1972). In Hudson v. Texas Racing Commission, this court held that a racing license that could only be "denied, suspended, or revoked after notice and a hearing" was a protected property interest. 455 F.3d 597, 600 (5th Cir. 2006). In Med Corp. v. City of Lima, the Sixth Circuit held that an ambulance company had a property interest in its license to operate ambulance services. 296 F.3d 404, 411 (6th Cir. 2002). However, the court also held that the company had no property interest in receiving 911 calls where there was no municipal code or official policy granting that interest, nor was the suspension of the receipt of 911 calls an effective suspension of its license. Id. at 410–11, 413.

None of these cases supports the argument that the GBRAA's September 25, 2001 letter granted CAS a property right. The GBRAA letter simply stated the status of agreements between the shuttle services and destinations. CAS's authority to carry passengers to those destinations was based solely upon agreements and decisions made by Beau Rivage and Keesler.

In its decision, Perrin v. Gulfport-Biloxi Regional Airport Authority, No. 1:04-CV-829, slip op. at 6 (S.D. Miss. Mar. 16, 2006), the district court relied on Baldwin v. Daniels, where a county sheriff refused to honor bonds written by a licensed bond agent. 250 F.3d 943, 944 (5th Cir. 2001). This court concluded that the agent's ability to have her bail bonds accepted at the county jail was not a property or liberty right and that "[d]iscretionary statutes do not give rise to constitutionally protectable interests." Id. at 946–47. The GBRAA's September 25, 2001 letter was not even a discretionary decision by a public official but

simply a reflection of the status of private contracts.  Thus, CAS has even less of a claim than the bond agent in Baldwin.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.